UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JUSTIN BROWN and TELISA                          :
LIPSCOMB, individually and on behalf of all      :
others similarly situated,                       :
                                                 :
                   Plaintiffs,                   :          18-cv-11091 (PAC)
                                                 :
        -against-                                :          **OPINION & ORDER**
                                                 :
DAIKIN AMERICA, INC.;                            :
BETH DONALDS; PAUL GREER;                        :
DONNA JOHNSTON; KASUHITO                         :
KITSUHIKO; MIKE LADD; and                        :
LISA WILL,                                       :
                                                 :
                   Defendants.                   :
------------------------------------------------------------X

Plaintiffs Justin Brown and Telisa Lipscomb (collectively, "Plaintiffs"), individually and

on behalf of a class of participants in the Daikin America, Inc. 401(k) Savings and Retirement

Plan, bring this putative class action lawsuit against Daikin America, Inc. and a group of

individual fiduciaries (collectively, "Daikin"). Plaintiffs allege that Daikin breached its fiduciary

duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001 *et seq.*,

by mismanaging the Plan's investment portfolio with respect to participants' 401(k) accounts.

Daikin moves to dismiss Plaintiffs' First Amended Complaint pursuant to Rules 12(b)(1)

and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion

is **GRANTED**.

**BACKGROUND**

I. **Factual Background**

The following facts are drawn from the First Amended Complaint and assumed true for purposes of this motion.[1] Daikin is a corporation with its principal place of business in the Southern District of New York. (Amend. Compl. ¶ 3, ECF 52.) Since November 2018, or the Class Period,[2] Daikin has offered its employees and certain affiliates the opportunity to participate in the Daikin America, Inc. 401(k) Savings and Retirement Plan. (*Id.* at ¶¶ 5, 19.) Plaintiffs are Alabama residents who participated in the Plan at different points during the Class Period. (*Id.* at ¶¶ 7, 8.)

The Plan is a defined contribution employee benefit plan that provides enrollees an opportunity to save for retirement.[3] (*Id.* at ¶ 2.) Under the Plan, participants may elect to contribute a portion of their pre-tax compensation to their 401(k) retirement accounts and Daikin, in turn, matches a percentage of those contributions. (*See* Exhibit 1, at 12–13, ECF 42-1; Exhibit 2, ECF 42-2.) To help implement the Plan, Daikin engaged John Hancock Trust Company, LLC to act as the Plan's trustee. (Amend. Compl. ¶ 6.) In that fiduciary role, John Hancock provided administrative services, including recordkeeping and investment platform services. (*Id.*)

The central dispute in this case arises from Daikin's management of the Plan during the

---

[1] On this motion to dismiss, the Court may consider documents that are attached as exhibits, incorporated by reference, or integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[2] The First Amended Complaint defines the Class Period as "November 28, 2012 through the date of judgment," and the Class as those who participated in the Plan during the Class Period, with the exception of specific categories of persons. (Amend. Compl. ¶ 197, ECF 52.)

[3] "As of December 31, 2017, the Plan had more than $120 million in assets and 590 participants with account balances." (Amend. Compl. ¶ 2.)

2

Class Period. Annually, Plan participants were given the choice to select from a preselected menu of investment funds to invest in using their respective 401(k) accounts. (Amend. Compl. ¶¶ 24–25, 50.) Daikin was responsible for selecting the Plan's investment offerings. (*Id.* at ¶ 25.) Although the precise number of investment options offered to Plan participants in any given year is not clear from the First Amended Complaint, investment offerings were fluid and neared 30 different selections "at any one time during the Class Period." (*Id.* at ¶ 49.) In addition, the Plan's offerings covered the major asset classes, including domestic equities, bonds, international equities, balanced investments, and a stable value fund, as well as both actively and passively managed funds. (*Id.*) Notably, however, only a "handful" of these investment selections were "index funds." (*Id.*)

The Plan incurred two kinds of expenses on participants: administrative expenses and investment management fees. Administrative expenses are the costs of compensating the "custodian, recordkeeper, insurance provider, and other vendors that provided administrative services to the Plan." (Amend. Compl. ¶ 27.) Investment management fees, or more colloquially referred to as a fund's "expense ratio," are the management fees paid to the particular investment fund included in the Plan (*Id.* at ¶ 26.) As the Plan's fiduciary, Daikin was responsible for considering both kinds of expenses in selecting investment options for the Plan. (*Id.* at ¶¶ 27, 28.)

## II. The First Amended Complaint

This class action lawsuit was initially filed on November 28, 2018. (ECF 2.) On February 26, 2020, the Plaintiffs amended their original complaint. (ECF 52.) The First Amended Complaint sets forth two legal claims under ERISA.

Count One of the First Amended Complaint alleges that Daikin breached its fiduciary

duties by failing to prudently select and monitor the Plan's investment options during the Class Period. (Amend. Compl. ¶ 206.) In particular, Plaintiffs' breach of fiduciary duty claims focus on five investment funds ("MainStay Funds") that were managed by John Hancock:

- (1) MainStay S&P 500 Index Fund;
- (2) MainStay Large Cap Growth Fund R2;
- (3) MainStay ICAP Select Equity Fund I;
- (4) MainStay MAP Fund I; and
- (5) MainStay Balanced Fund I.

(*Id.* at ¶¶ 73–134.)

During the Class Period, Plaintiffs personally invested in two of the five MainStay Funds: (1) the MainStay S&P 500 Index Fund and (2) the MainStay Large Cap Growth Fund R2. (*Id.* at ¶¶ 7–8.) In total, the Plaintiffs invested in six different investment options offered by the Plan.

Count Two of the First Amended Complaint alleges a disclosure injury under ERISA. (*Id.* at ¶ 217.) In July 2018, the Plaintiffs requested the disclosure of certain Plan documents from Daikin in preparation for this lawsuit. (*Id.* at ¶ 220.) Plaintiffs allege, however, that Daikin did not fully comply with their disclosure request within the 30-day timeframe as required under ERISA. (*Id.* at ¶¶ 221, 223.) Consequently, they contend that this delay entitles them to monetary damages.

### III.    **Motion to Dismiss**

Daikin now moves to dismiss the First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF 40.) In support of its motion, Daikin argues that Plaintiffs lack Article III standing to bring this case because they did not personally invest in each of the funds complained of in the First Amended Complaint. Alternatively, Daikin

contends that it did not breach its fiduciary duties under ERISA while managing the Plan, and hence, that the case must be dismissed under Rule 12(b)(6).

## **LEGAL STANDARD**

### I. **Rule 12(b)(1)**

On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke the Court's jurisdiction bears the burden of proving that subject matter jurisdiction exists. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In deciding a Rule 12(b)(1) motion, the district court "may refer to evidence outside the pleadings." *Id.* It is incumbent, however, on the plaintiff to prove subject matter jurisdiction exists by a "preponderance of the evidence" standard. *Id.*; *see also Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

### II. **Rule 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (cleaned up). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a Rule 12(b)(6) motion, the district court accepts as true all of the factual allegations contained in the complaint and draws all reasonable inferences in the

plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). That

tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, a

pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555.

## ANALYSIS

### I.      Article III Standing

As an initial matter, Daikin contends that the Plaintiffs have not demonstrated Article III

standing to raise claims against the Plan's investment options that they did not personally invest

in during the Class Period. (Daikin Mem. at 9, ECF 41.) As noted above, Plaintiffs had

personally invested in six investment offerings during the Class Period, and in two of the five

MainStay Funds specifically alleged to be deficient in the First Amended Complaint. (*Id.* at 10.)

So because they did not have a personal stake in each of the funds that their lawsuit complains

about, Daikin argues that the Plaintiffs lack Article III standing with respect to those investment

funds. (*Id.*)

Article III standing is an indispensable feature of our separation of powers structure and

"the irreducible constitutional minimum" that must be satisfied before a case can pass through

the front gates of federal court. *Schlesinger v. Reservists Comm.*, 418 U.S. 208, 220–21 (1974).

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that

he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2)

that the injury was caused by the defendant, and (3) that the injury would likely be redressed by

the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020); *McMorris

v. Carlos Lopez & Assocs.*, LLC, No. 19-4310 (2d Cir. April 26, 2021). Moreover, in the context

of a class action lawsuit, plaintiffs must also establish "class standing"—that is, standing to

litigate the claims of the absent class. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012).

The standing question presented before the Court thus is two-fold: (1) whether Plaintiffs, themselves, have demonstrated Article III standing in the instant case; and (2) whether Plaintiffs have demonstrated class action standing to litigate the claims of absent class members. *Id.* The Court will address each issue in turn.

***Plaintiffs' Individual Standing.*** Daikin's argument with respect to Article III standing is that the Plaintiffs did not suffer any injuries in the particular funds that they had never personally invested in, and thus, for standing purposes, their injuries are not sufficiently "concrete" and "particularized." This line of reasoning, however, misconceives the nature of this lawsuit. The nature of this lawsuit is derivative, not personal: the Plaintiffs bring their breach of fiduciary duty claims pursuant to Sections 1109(a)[4] and 1132(a)(2)[5] of ERISA, which do not call for "individual relief, but instead [are claims] brought in a representative capacity on behalf of the plan." *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*,

---

[4] Section 1109(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a).

[5] Section 1132(a)(2) confers civil enforcement standing on "the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title[.]" 29 U.S.C. § 1132(a)(2).

710 F.3d 57, 65 (2d Cir. 2013) (cleaned up); *see also LaRue v. DeWolff*, 552 U.S. 248, 251–52 (2008) (observing that the purpose of these provisions is "protect the entire plan, rather than the rights of an individual beneficiary"). Accordingly, the Plaintiffs sue not only to recover their individual losses but to also vindicate the collective injuries suffered by the Plan and its participants. *L.I. Head Start*, 710 F.3d at 65. And ERISA permits them to do this—to step into the shoes of Plan attorney general—so long as they can demonstrate that they are "within the zone of interests ERISA was intended to protect." *Id.* (quoting *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 668 (2d Cir. 1994).

Here, Plaintiffs have satisfied this test. As past participants in the Plan, Plaintiffs' interests are within the zone of interests that "ERISA was intended to protect." *See* 29 U.S.C. § 1132(a)(2) (authorizing civil enforcement by a retirement plan participant under ERISA's liability provisions); *L.I. Head Start*, 710 F.3d at 66; *see Slupinski v. First Unum life Ins. Co.*, 554 F.3d 38, 47 (2d Cir. 2009) ("The central purpose of ERISA is to protect beneficiaries of employee benefit plans[.]"). Derivative standing to sue on behalf of the Plan has unlocked the door to federal court.

Daikin's remaining argument with respect to Article III standing fails as a matter of law. Anticipating that derivative standing may exist, Daikin contends that the Plaintiffs' alleged injuries do not actually affect the Plan as a whole, but instead, are personal injuries that abrogate the derivative nature of this lawsuit. (Daikin Mem. at 11, n. 4.) Even if this premise were true, however, it is still of no moment. The Supreme Court has held that derivative suits under Section 1132(a)(2) "authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue*, 552 U.S. at 256. In other words, *LaRue* instructs that a plaintiff's individual recovery is not mutually exclusive with plan-wide relief under

Section 1132(a)(2). *Id.* ("We therefore hold that although [§ 1132(a)(2)] does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."). So here, the mere fact that the Plaintiffs stand to recover in their individual capacities as investors in the Plan, without more, does not abrogate the derivative nature of their lawsuit. *See id.*

Moreover, the existence of personal injuries on the part of the Plaintiffs is, in fact, a *necessary* requirement for Article III standing under the Supreme Court's recent decision in *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615 (2020). In *Thole*, the Supreme Court held that beneficiaries of a defined-benefit retirement plan who "receive a fixed payment each month" and whose "payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions" lacked Article III standing to bring breach of fiduciary duty claims under ERISA. *See id.* at 1618. The Court reached this conclusion after finding a lack of concrete injuries suffered by the plaintiffs, whose monthly retirement benefits would remain fixed regardless of the plan fiduciary's investment decisions. *See id.* at 1619. And in doing so, the Court explained that there "is no ERISA exception to Article III" and therefore, a concrete and personalized injury must be alleged in order to bring suit under ERISA.[6] *See id.* at 1622. Here, that requirement has been satisfied because the Plaintiffs personally invested in several of the Plan's investment funds that they now claim were imprudently selected. Thus, under *Thole*,

---

[6] To be sure, *Thole* must not be read to stand for the sweeping proposition that derivative lawsuits under ERISA do not satisfy Article III standing. In *Thole*, the Court explained that the plaintiffs could claim "standing as representatives of the plan itself" but "in order to claim the interests of others, the litigants themselves still must have suffered an injury in fact[.]" *Thole*, 140 S. Ct. at 1620 (cleaned up). Here, Plaintiffs have alleged personal losses as past participants in the Plan, so they satisfy that requirement.

they have demonstrated Article III standing to bring this case.[7]

***Class Action Standing.*** As noted before, the Plaintiffs must also demonstrate class action standing to sue on behalf of absent class members. The Second Circuit has articulated a two-step test that governs this analysis: (1) the plaintiff must show that she "personally" suffered "actual injury" because of the defendant's illegal conduct; and (2) "such conduct" must implicate "the same set of concerns" as those of the rest of the putative class. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (cleaned up). Both requirements have been met in this case.

*First*, because the Plaintiffs allege that they "personally" suffered "actual" injuries by investing in several of the Plan's investment offerings during the Class Period, they have established step one of the class action standing analysis. *NECA-IBEW*, 693 F.3d at 162. *Second*, because the Plaintiffs and the absent class were both involved with the Plan at some point during the Class Period, both groups share the "same set of concerns" regarding Daikin's management of the Plan. *Id.* Therefore, the Court finds that the second element of class action standing has been met.

In sum, Plaintiffs have demonstrated Article III standing to bring this case.

## II.    **Breach of Fiduciary Duty Claims**

Turning to the merits, Count One of the First Amended Complaint alleges that Daikin violated ERISA in two respects: *First*, the Plaintiffs contend that Daikin breached its duty of loyalty by selecting the MainStay Funds for inclusion in the Plan; and *second*, the Plaintiffs

---

[7] Daikin also argues, with respect to Article III standing, that Plaintiffs have not sufficiently alleged any financial losses due to excessive investment management fees and so, they did not suffer concrete and personalized injuries. (Daikin Mem. at 11–12.) These arguments, however, are better construed as breach of fiduciary duty arguments, not Article III standing claims.

contend that Daikin breached its duty of investment prudence by failing to select investment options that yielded a greater return for Plan participants. The Court will address each claim in turn.

### A. Conflict of Interest Claim

Recall that the MainStay Funds were managed by John Hancock, who also served as the Plan's investment platform provider during the Class Period. *See supra* 4. Given John Hancock's dual roles with respect to the Plan, the Plaintiffs allege that John Hancock was under a "strong financial incentive to market its own proprietary funds," and that Daikin's failure to exclude the MainStay Funds from the Plan constituted a breach of the duty of loyalty under ERISA. (Amend. Compl. ¶ 75.)

ERISA imposes "four distinct, but interrelated duties" on fiduciaries, including the duty to act "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 715 (2d Cir. 2013) (quoting 29 U.S.C. § 1104(a)(1)(A)). As Judge Friendly explained, the duty of loyalty requires that "decisions be made with an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982) (cleaned up). To plausibly plead a duty of loyalty claim under ERISA, a plaintiff must allege facts showing that the fiduciary in question acted purposely—or with the "goal"—of "providing benefits to itself or someone else." *Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017).

Under that standard, the Plaintiffs have not pled a plausible duty of loyalty claim. Simply put, the First Amended Complaint contains no plausible facts showing that Daikin selected the

MainStay Funds for the purpose of benefitting itself or John Hancock. *Sacerdote*, 2017 WL 3701482, at *5. Instead, the Plaintiffs attempt to *infer* a conflict of interest from the fact that John Hancock held dual roles with respect to the Plan. But, as several other courts in this district confirm, that fact alone does not demonstrate that Daikin purposely chose the MainStay Funds with an "eye" towards its own benefit or even John Hancock's. *Bierwirth*, 680 F.2d at 271; *see Sacerdote*, 2017 WL 3701482, at *6 (the fact that "all of the Plans' options were the recordkeepers' own proprietary investments" did not plausibly allege a breach of loyalty claim) (cleaned up); *Patterson v. Stanley*, No. 16-CV-6568 (RJS), 2019 WL 4934834, at *9 (S.D.N.Y. Oct. 7, 2019) (holding that a fiduciary's selection of its own funds for inclusion in its defined contribution plan did not constitute a breach of the duty of loyalty); *cf. LaScala v. Scrufari*, 479 F.3d 213, 220–21 (2d Cir. 2007) (concluding there was a breach of the duty of loyalty, under ERISA, where fiduciary "awarded himself a series of salary raises" without required authorization). Accordingly, Plaintiffs' duty of loyalty claim must be rejected.

### B. Duty of Prudence Claim

Next, Plaintiffs allege that Daikin violated its duty of prudence, under ERISA, by selecting investment options for the Plan that were tainted by excessive fees which, in turn, incurred substantial losses on Plan participants. Under Section 1104(a)(1)(B) of ERISA, fiduciaries of qualifying retirement plans are obligated to act:

> with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(B).

It is well established in this circuit that the prudence *vel non* of a fiduciary's actions, under ERISA, is judged "based upon information available to the fiduciary at the time of each

investment decision and not from the vantage point of hindsight." *Morgan Stanley*, 712 F.3d at 716 (citing *In re Citigroup ERISA Litigation*, 662 F.3d 128, 140 (2d Cir. 2011) (cleaned up). The central aim of ERISA's investment prudence standard is to police the *means* by which fiduciaries carry out their duties, and not to scrutinize the *substantive outcomes* of their decisions. *See Morgan Stanley*, 712 F.3d at 716 ("This standard focuses on a fiduciary's conduct in arriving at an investment decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.") (cleaned up); *see also Gearren v. The McGraw-Hill*, 660 F.3d 605, 610 (2d Cir. 2011) (stating that an investment does not become imprudent because of a significant "downward trend" in price); *In re Citigroup*, 662 F.3d at 141.

Thus, for a breach of prudence claim to survive a motion to dismiss, it must allege sufficient facts showing flaws in the fiduciary's "knowledge, methods, or investigations" in arriving at the underlying investment decisions. *See Morgan Stanley*, 712 F.3d at 716. Threadbare allegations that the funds at issue underperformed or that "better investment opportunities were available" are insufficient to make out a plausible prudence claim. *See id.*; *In re Citigroup*, 662 F.3d at 141. As the Seventh Circuit aptly noted, "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).

The operative question here, therefore, is whether Daikin employed adequate methodologies in selecting the Plan's investment offerings during the Class Period. On this issue, the First Amended Complaint sets forth four allegations: (1) Daikin acted imprudently by selecting underperforming and unjustifiably expensive investment options, and failing to monitor

them (Amend. Compl. ¶ 73); (2) Daikin imprudently offered Plan participants retail share class funds instead of institutional share funds (*id.* at ¶ 147); (3) Daikin imprudently engaged and monitored John Hancock whose administrative fees were unreasonably expensive (*id.* at ¶ 161); and (4) Daikin offered funds containing high fees that "were hidden in the sense that they were charged to the expense ratios of the Plan's investments, not to participants accounts" (*id.* at ¶¶ 172, 175). For the reasons set forth below, the Court concludes that none of these allegations raises a plausible claim under ERISA's investment prudence standard. Therefore, the claims are dismissed.

*Underperformance.* The bulk of the Plaintiffs' allegations, with respect to their investment prudence claim, concern the *underperformance* of the Plan's funds during the Class Period. In short, the Plaintiffs contend that better investment vehicles were available during the Class Period and Daikin's failure to select those better alternatives (e.g. index funds) constituted a breach of its fiduciary duties under ERISA. In support of this theory, the Plaintiffs copiously reference the teachings of various financial authorities, such as Warren Buffet (Amend. Compl. ¶¶ 36, 65, 71), Nobel Laureates in economics (*id.* at ¶¶ 63, 65), and other leading financial experts. (*See, e.g., id.* at ¶¶ 35, 50, 85, 99, 116, 123.)

The problem with these allegations, however, is that the investment prudence required under ERISA does not reflect the investment prudence of Warren Buffett or Nobel Laureate economists. And as this circuit's precedents have affirmed time and time again, underperformance allegations of this sort are allegations based in "hindsight," which fall short of the plausibility standard under Rule 12(b)(6). *See Morgan Stanley*, 712 F.3d at 716; *In re Citigroup*, 662 F.3d at 140. Indeed, as the Seventh Circuit explained, "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund."

*Hecker*, 556 F.3d at 58. Accordingly, because the Plaintiffs' allegations of underperformance do not reveal a defective methodology by which the investment options were selected, they do not plausibly allege a violation of the duty of prudence under ERISA.[8] *See Morgan Stanley*, 712 F.3d at 716; *In re Citigroup*, 662 F.3d at 140.

    ***Retail Shares.*** The Court also finds that Daikin's selection of retail shares in lieu of institutional shares for several investment funds in the Plan does not reveal actionable misfeasance under ERISA. In the context of ERISA cases, several courts in this district have found that the failure to include "lower-cost share classes . . . do not, as a matter of law, support an inference of a flawed fiduciary process." *See, e.g., Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-CV-6685 (ALC), 2019 WL 4466714, at *6 (S.D.N.Y. Sept. 18, 2019); *see Sacerdote*, 2017 WL 3701482, at *11 (holding the same and noting the 3d, 7th, and 9th circuits' agreement). As the *Sacerdote* court explained, there are inherent trade-offs between retail and institutional share classes—for example, the greater liquidity normally offered by retail share classes, *see* 2017 WL 3701482, at *11, and the cheaper fees associated with institutional share classes. (Amend. Compl. ¶ 147.) And under ERISA, the responsibility to weigh these

---

[8] Plaintiffs advance two other allegations that also fail as a matter of law. *First*, Plaintiffs argue that a 2009 regulatory action and settlement between John Hancock and the SEC raise the inference that Daikin did not prudently select and monitor the MainStay Funds when it selected those funds for the Plan. (Amend. Compl. ¶ 79.) But this argument is ultimately unpersuasive because the SEC action did not concern the MainStay Funds at issue here, and because the regulatory action occurred well before the Class Period. *Second*, Plaintiffs argue that two managerial changes in the MainStay ICAP Equity Fund during the Class Period indicate that the fund should have been terminated (sooner) from the Plan. (*Id.* at ¶¶ 98, 104.) Yet, as the Plaintiffs themselves acknowledge, the MainStay ICA Equity Fund was removed from the Plan following these managerial changes, and furthermore, even if removal did not follow, the Court concludes that the internal HR decisions of investment funds provide no basis for inferring fiduciary misfeasance under ERISA.

competing interests and to decide on a (prudent) financial strategy lies with the plan's fiduciary, not an Article III court. Thus the mere fact that Daikin selected retail share classes for certain investment options in the Plan does not establish a breach of fiduciary duty under ERISA.

*Administrative Fees.* Next, the Plaintiffs allege that Daikin breached its duty of prudence by paying unreasonably expensive administrative fees to John Hancock. According to the First Amended Complaint, John Hancock received a compensation of "$3 million to $5 million" during the Class Period from "direct payments, income from stable value funds, fees from separate accounts, revenue share from mutual funds, among other sources." (Amend. Compl. ¶¶ 164, 167.) In contrast, the Plaintiffs allege that an alternative investment platform provider would have only charged "$30,000 to $40,000 per year" during that same period (*id.* at ¶¶ 166, 167), and thus, Plan participants were charged excessive administrative fees due to Daikin's negligence in engaging John Hancock.

The Plaintiffs' comparison, however, is illusory because as it pertained to the Plan, John Hancock was not only an administrative services provider, but also an investment manager for several of the Plan's investment funds. So it would only make sense that the fees it charged, during the Class Period, would exceed those charged by a simple administrative services provider. In light of this fact, Plaintiffs cannot demonstrate that John Hancock's fees were "so disproportionately large that [they bore] no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Gartenberg v. Merrill Lynch Asset Mgmt.*, 694 F.2d 923, 928 (2d Cir. 1982); *see Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009). This allegation therefore also fails to establish a breach of fiduciary duty under ERISA. *See Ferguson*, 2019 WL 4466714, at *7–8 (rejecting similar excessive administrative fees claim).

***Hidden Fees.*** Finally, the Court rejects the Plaintiffs' conclusory allegation that Daikin failed to adequately monitor the MainStay Funds' "hidden fees." The Plaintiffs allege that certain fees paid to John Hancock were "hidden" because they were charged in the MainStay Funds' expense ratios and not directly to participants' 401(k) accounts. (Amend. Compl. ¶¶ 172, 175.) But the term "hidden," as used by Plaintiffs here, is a misnomer because relevant Plan documents expressly disclosed the nature of John Hancock's fee payment arrangement.[9] (*See* Exhibits 9 & 11, ECF 42.) Hence, the Court concludes that Daikin did not breach its duty of prudence in this respect.

For the foregoing reasons, the Court dismisses Plaintiffs' breach of fiduciary duty claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### C. Untimely Disclosure Claim

The Plaintiffs' final claim concerns an alleged disclosure violation under ERISA. Under Section 1024(b)(4), administrators of qualifying retirement plans must "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description . . . or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Furthermore, ERISA's remedial provision states that if the administrator fails to fulfill such a

---

[9] The Plan's 2018 Disclosure Statement provides:

> The plan may pay service providers for administrative services rendered during the year, such as recordkeeping and investment advisory services. *Service providers may offset the fees they would otherwise charge with revenue sharing payments that the service provider receives in connection with plan investment options*, otherwise their service fees may be paid from a segregated account under the plan and/or may be charged against participants' or beneficiaries' accounts on a pro rata basis, per capita basis, or as a specific dollar amount, subject to the terms of the plan.

Exhibit 9, at 7 (emphasis added).

request within 30 days, it is within the "court's discretion" to assess a penalty of "up to $100 a day from the date of such failure" against the plan administrator. 29 U.S.C. § 1132(c)(1).

In Count Two of the First Amended Complaint, the Plaintiffs allege that they had requested Daikin to disclose "the summary plan description, plan documents and amendments, 408(b)(2) service provider disclosures, 404(a)(5) disclosures, and an enrollment packet" on July 23, 2018. (Amend. Compl. ¶ 220.) However, the Plaintiffs allege that Daikin did not completely fulfill this disclosure request until only after the present litigation commenced in November 2018. (*Id.* at ¶ 223.) Accordingly, they contend that ERISA's remedial provision entitles them to statutory damages.

As noted at the outset, monetary relief under Section 1132(c)(1) is entirely discretionary. *McDonald v. Pension Plan of NYSA-ILA Pension Tr. Fund*, 320 F.3d 151, 163 (2d Cir. 2003). To guide that discretion, the Second Circuit has articulated several factors to consider in deciding whether Section 1132(c)(1) relief is warranted: "(1) the administrator's bad faith or intentional conduct; (2) the length of the delay; (3) the number of requests made; (4) the extent and importance of the documents withheld; and (5) the existence of any prejudice to the participant or beneficiary." *Id.*

Upon balancing these considerations, the Court declines to exercise its discretion to award statutory damages. *First*, apart from threadbare assertions, the First Amended Complaint does not allege any plausible facts showing that Daikin acted in bad faith or with the intent to hinder the present lawsuit. *Second*, the delay was insignificant and only one disclosure request was made by Plaintiffs. *Finally*, although the withheld documents were certainly important, Daikin partially fulfilled the disclosure request when initially asked, and it completed the rest of the disclosures shortly thereafter. Consequently, the Court finds no compelling circumstances

that call out for the imposition of monetary relief. *McDonald*, 320 F.3d at 163. Count Two of the First Amended Complaint is therefore dismissed.

## CONCLUSION

For the foregoing reasons, Daikin's motion to dismiss is **GRANTED**. The Clerk of Court is respectfully directed to terminate this case.

Dated: New York, New York
       May 4, 2021

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge